**In Re the Marriage of Arlene L. DANIELSON, Petitioner, Respondent,**

v.

**Duane M. DANIELSON, Appellant.**

**No. CO–86–299.**

Court of Appeals of Minnesota.

Aug. 19, 1986.

Patrick J. Leary, Marshall, for respondent.

Joseph H. Louwagie, Marshall, for appellant.

Considered and decided by PARKER, P.J., and WOZNIAK and SEDGWICK, JJ., with oral argument waived.

## OPINION

SEDGWICK, Judge.

Duane Danielson appeals a dissolution judgment and decree and an order denying his motion for amended findings or new trial. He challenges the trial court's characterization, valuation, and division of the parties' property. We affirm.

## FACTS

Appellant Duane Danielson and respondent Arlene Danielson were married in 1973. Respondent had been married before, and had substantial assets from her

first marriage. Respondent has three children from the prior marriage. The children received Social Security benefits as a result of their father's death. Respondent deposited the checks in the parties' joint checking account and then transferred part of the money to individual bank accounts for each of the children. The remaining Social Security funds in the joint account were used for improvement of the parties' property and for the children's support.

Shortly before the parties' marriage, appellant entered into a contract for deed on 200 acres of land. Respondent contributed $11,000 in nonmarital funds toward the purchase price and appellant contributed $6,000 in nonmarital funds. The balance of the purchase price was paid out of marital income. Respondent presented evidence that she contributed an additional $12,024 in nonmarital funds to improvements made on the property.

Appellant's expert witness testified that the parties' real estate was worth $700 per acre of bare land, and $750 per acre with buildings. The expert later testified that the value of the entire tract was $725 per acre.

Respondent testified that in her opinion the land was worth $1,100 to $1,200 per acre. She also testified that a real estate agent had appraised the value of the building site as between $75,000 and $80,000.

After considering the expert's testimony, the parties' testimony, and the evidence regarding improvements to the family home, the trial court found the fair market value of the real estate was $190,000. $140,000 was attributed to the bare land, and $50,000 was attributed to the home and improvements.

The expert also testified regarding the value of the standing crops and the farm machinery. He testified that the machinery was worth approximately $145,800. He further testified, however, that the value was diminished by 20–25% due to passage of time since the appraisal. With respect to crop values, the expert testified that the value of beans was $159 per acre and the value of corn was $145 per acre.

The expert also testified, however, that the growing conditions at the time were not ideal: the ground was saturated, the crops were wet, and the crops were behind normal growing years.

The trial court found the value of the machinery to be $120,000 based upon the expert's testimony. The court also found that the parties owned an additional $10,650 worth of machinery that was not included on the appraisal.

The trial court's valuation of the crops was based upon the expert's testimony and a cash flow summary prepared by appellant's accountant. The court viewed the accountant's crop yields as conservative, so substituted the expert's yields in the accountant's formula to arrive at a value of $47,000 for all standing crops.

The court awarded respondent nonmarital property including certificates of deposit, her IRA, and her current home. Respondent was also awarded a cash property settlement of $125,700 secured by a lien on the parties' real estate. The settlement is to be paid in installments.

Appellant was awarded the real estate, subject to respondent's lien, and the farm machinery. The parties' major debts were also apportioned to appellant. The remaining personal property was divided between the parties.

## ISSUE

Did the trial court err in characterizing, valuing, and dividing the parties' property?

## ANALYSIS

### Characterization

Appellant first challenges the trial court's finding that respondent contributed $23,024 in nonmarital funds to the parties' homestead. He argues that because marital and nonmarital funds were commingled, respondent was unable to trace her nonmarital funds to the improvements.

The $23,024 figure represents respondent's initial $11,000 contribution to the purchase price, and the remainder reflects

amounts she contributed to improvements of the property. To document her nonmarital contribution, respondent introduced an exhibit showing the amount of her nonmarital funds and the children's Social Security funds used for improvements. Respondent's contributions came primarily from certificates of deposit. The trial court did not give respondent credit for the Social Security funds used, but deemed those amounts marital in nature.

■ All property acquired during the marriage is presumed to be marital property. Minn.Stat. § 518.54, subd. 5 (1984). The party seeking to characterize certain property as nonmarital must show by a preponderance of the evidence that the asset is nonmarital. *Pearson v. Pearson*, 363 N.W.2d 337, 339 (Minn.Ct.App.1985) (citation omitted). If a party claims that a nonmarital asset has been exchanged for another asset, he or she must be able to trace the exchange. Tracing to a nonmarital source is required when "the owner shows * * * that the asset was 'acquired in exchange for' nonmarital property." *Kottke v. Kottke*, 353 N.W.2d 633, 636 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. Dec. 20, 1984).

This court recently found that a party had met the tracing requirement by showing that $5,142 of her inheritance was used for remodeling the homestead. *See Nash v. Nash*, 388 N.W.2d 777 (Minn.Ct.App. 1986), *pet. for rev. filed* (Minn. July 16, 1986). In that case, the wife introduced receipts for improvements made about two weeks after she received her inheritance. The court stated: "Tracing does not require a party to produce the serial numbers of the dollar bills used." *Id.* at 781. Moreover, the court noted "[s]imply routing the funds through a joint account 'does not transform non-marital property into marital property.'" *Id.* (citation omitted).

■ Here, respondent presented evidence of substantial improvements that could not have been made without her contributions. She demonstrated that she periodically cashed certificates of deposit to pay for the improvements. As *Nash* indicates, intricate detail is not required. The finding that respondent contributed $24,024 of her nonmarital funds to the homestead is not clearly erroneous.

We reject appellant's argument that this case is controlled by *Hein v. Hein*, 366 N.W.2d 646 (Minn.Ct.App.1985). In *Hein*, the husband showed that he had contributed $21,000 of a nonmarital inheritance to the parties' homestead. At about the same time, the wife received a personal injury settlement. Instead of contributing the settlement proceeds to the homestead, however, the funds were used for personal property and could not be traced. Nonetheless, this court affirmed equal division of the homestead, relying on Minn.Stat. § 518.58 (1984). The court stated that the inequity that would result from tracing was a relevant circumstance to be considered within the meaning of § 518.58 in determining unfair hardship. The court concluded that evidence of unfair hardship warranted invasion of the husband's nonmarital assets.

*Hein* is not helpful to appellant. There is no inequity in tracing respondent's nonmarital contributions to the parties' real estate. There has been no showing of unfair hardship to justify apportioning part of respondent's nonmarital property to appellant. Appellant has not presented evidence that he contributed comparable amounts of nonmarital assets to the farm operation.

■ Appellant also challenges the trial court's finding that a $66,940 savings account was respondent's nonmarital property. Respondent testified that the savings were partly from her original house sale, partly from Social Security funds, partly from insurance proceeds, and partly from income earned before the marriage. All these monies were received prior to the parties' marriage. The testimony amply supports the trial court's finding that the funds were nonmarital in nature. The finding is not clearly erroneous. Minn.R.Civ.P. 52.01. Likewise, there is sufficient testimony to support the finding that the certif-

icates of deposit were respondent's non-marital property.

■ Appellant next argues that the trial court erred in not awarding him the farm machinery as nonmarital property. On appellant's motion for new trial, the court stated in its memorandum:

[Appellant's] claim of $43,053 in farm machinery at the time of the marriage fails. The record does not show what machinery should be set aside to the respondent as non-marital property, what machinery was exchanged for present assets, what machinery was sold, what machinery was depreciated and used up, or the present value of machinery owned by the petitioner that still is in the parties' possession.

Thus, the trial court determined that appellant failed to meet his burden of showing that the machinery was nonmarital property. We agree that the evidence is insufficient to determine what portion, if any, is appellant's nonmarital property.

We also reject appellant's claim that he is entitled to a finding that $6,200 of his nonmarital funds were used to construct a machine shed. Appellant argues that he used the proceeds from crops grown the year before the parties' marriage to build the shed. He also testified, however, that the money was used for other things. It is for the trial court to weigh the credibility of the evidence. The court's refusal to find that the machine shed was built with appellant's nonmarital funds is not error.

■ Appellant's argument that the children's Social Security funds should have been characterized as marital property is without merit. The checks were for the benefit of the children. The parties checking account was used merely as a conduit for the funds. Appellant has no claim to any of the money that did not remain in the account and become commingled with the parties' marital funds.

### Valuation

Appellant argues that the trial court erred in valuing both the parties' real es-

tate and the standing crops. He argues that addition of $50,000 for the value of the improvements to the real estate is error and that, because the expert's valuation of the crops was based on ideal conditions, the crop valuation is erroneous.

The valuation of an asset is a fact question and will not be set aside unless clearly erroneous. *Hertz v. Hertz,* 304 Minn. 144, 145, 229 N.W.2d 42, 44 (1975) (citations omitted). *Hertz* goes on to state:

[V]aluation is necessarily an approximation in many cases, and it is only necessary that the value arrived at lies within a reasonable range of figures. Thus, the market value determined by the trier of fact should be sustained if it falls within the limits of credible estimates made by competent witnesses even if it does not coincide exactly with the estimate of any one of them.

*Id.*

In valuing both the real estate and the crops in this case, the trial court considered all the evidence to arrive at its conclusion. The court did not accept the valuation of either expert, but instead synthesized the evidence to arrive at a figure that it considered more accurate. The court weighed both parties' evidence to arrive at a just valuation. The findings are supported by the evidence and are not clearly erroneous.

### Division

■ Finally, appellant challenges the property division. Appellant argues that giving respondent a lump sum settlement award was an abuse of discretion and that the court should have awarded each party a portion of the real estate subject to a certain amount of debt.

The court is to make a just and equitable division of the parties' property. Minn. Stat. § 518.58 (1984). The trial court's decision will be reversed only for an abuse of discretion. *Servin v. Servin,* 345 N.W.2d 754, 758 (Minn.1984). This court must affirm the trial court's decision if it has "an acceptable basis in fact and principle even though this court may have taken a different approach." *Id.* (citation omitted).

Appellant stated at trial that he wanted to try to continue farming. The trial court attempted to effect this result, while at the same time allowing respondent to get her share out of the parties' property. After considering the parties' proposed alternatives, the trial court adhered to its original decision. The court noted that although each party's proposed alternative was more acceptable to him or her, the court's division more equitably served both parties' interests. The property division has an acceptable basis in fact and principle and was not an abuse of discretion.

## DECISION

The trial court's characterization of the parties property is not clearly erroneous.

The trial court's valuation of the parties' property is not clearly erroneous.

The trial court did not abuse its discretion in dividing the parties' property.

Respondent is entitled to $400 attorneys fees on appeal.

Affirmed.