*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1957**

In re the Marriage of:
Rachel Lynn Rogers, petitioner,
Respondent,

vs.

David Matthew Rogers,
Appellant

**Filed December 19, 2016
Reversed and remanded
Worke, Judge**

Koochiching County District Court
File No. 36-FA-14-598

Steven M. Shermoen, Steven M. Shermoen Law Office, International Falls, Minnesota (for respondent)

Steven A. Nelson, Nelson & Barnhart, LLC, International Falls, Minnesota (for appellant)

Considered and decided by Cleary, Chief Judge; Peterson, Judge; and Worke, Judge.

**U N P U B L I S H E D   O P I N I O N**

**WORKE**, Judge

Appellant-husband argues that the district court improperly awarded respondent-wife a share of husband's nonmarital property and need-based attorney fees. We reverse and remand.

**FACTS**

Appellant-husband David Matthew Rogers and respondent-wife Rachel Lynn Rogers began dating in late 2011. Wife was a college student living in Duluth, and husband was living in Superior, Wisconsin. In the spring of 2012, the parties decided to move to International Falls where husband's parents lived. The parties married in February 2013, when husband was 39 years old and wife was 20 years old. The parties separated in July 2014, and on August 21, 2014, wife petitioned for dissolution of the marriage.

At a hearing on the petition, wife testified that in March 2012, she and husband visited International Falls and husband's parents took the parties to a home and told them that they had purchased the home for them. Wife testified that she attended the closing, but did not sign any documents. Wife testified that she moved into the home in May 2012. Wife testified that she spent approximately $1,000 for repairs and contributed to property-tax payments and utilities.

Wife testified that she is employed full time at Wells Fargo earning $16.25 an hour. Wife testified that she was attending college and planned to earn a business-management degree by the spring of 2015.

Wife testified that a 2011 vehicle was husband's nonmarital property and that husband's brother gave husband a 1999 vehicle. Wife testified that she had a vehicle when the parties married, but sold it to pay off the loan. Wife then purchased a vehicle with half her money and half contributed by husband's mother. Husband's parents then traded in the vehicle and purchased a new vehicle that wife drove until the parties separated. At the time of trial, wife had been without a vehicle for six months. Wife walked to places or

2

paid for rides. Wife testified that she planned to purchase a vehicle after consolidating her debt.

Wife testified that she would not be able to pay her attorney fees because she wanted to buy a vehicle. Wife testified that she paid approximately $600 in attorney fees, owed approximately $2,225, and would owe an additional $1,000.

Husband testified that he works seasonally in construction. During the six months each year he is working, husband works an average of 50 hours a week and earns $17 per hour. When he is unemployed, husband receives $351 a week in unemployment benefits. Husband testified that he was covered under wife's medical plan through her employer, but after the dissolution he would have to purchase medical insurance.

Husband testified that his brother gave him a vehicle that required approximately $1,400 in repairs to get running. Husband testified that he did not have any debt when he entered the marriage or at the time of trial. Husband testified that the parties did not have any joint accounts.

Husband's mother, Debra Bowman, testified that in 2012 she decided to help her son by moving him to International Falls to be closer to her. Bowman and her husband purchased a home as an investment and a place for her son to live. Bowman testified that she and her husband never intended that any portion of the property would be a joint gift to the parties. Bowman testified that her son's name was added to the title as a co-owner as a method of estate planning.

The judgment and decree was entered on April 30, 2015. The district court stated that, although the marital home was purchased prior to the marriage, the parties were dating

3

at the time and were equally involved in the purchase. The district court found that wife testified that she was never told that she had no marital interest in the property and did not have the understanding that husband's interest was nonmarital. The district court concluded that husband failed to meet his burden of showing that his interest in the home was a gift from his parents to him but not to wife. The district court ordered husband to pay wife $13,616.50 as her one-half share of his equity in the home. The district court also ordered husband to pay wife $5,281.50 for half of the debt she carried and $2,200 for need-based attorney fees.

Husband moved for a new trial, challenging the district court's characterization of the home and award of attorney fees. The district court denied husband's motion, but issued amended findings. While still concluding that husband failed to meet his burden of showing that the home was a gift to him but not to wife, the district court's amended findings stated:

> [T]his court shall nevertheless not characterize [husband's] one-third equity in the homestead as marital property . . . . However, pursuant to *Minn. Stat. § 518.58, subd[.] 2*, this Court does apportion one-half of the equity constituting [husband's] one-third interest in the property to [wife] as marital property because [wife's] property is "so inadequate as to work an unfair hardship" considering that she currently has no vehicle and struggles to find transportation while [husband] has two unencumbered vehicles.

The district court also retained the award of need-based attorney fees. The district court stated in its amended findings:

> [Wife's] hourly wage is only $.75 per hour less than [husband's]. [Husband] has overtime earnings that exceed [wife's] earnings without overtime for the six months each year

4

he is employed. [Husband] remains intentionally unemployed and receives unemployment insurance benefits for half of every year. [Husband] has $6,644.69 more in his bank accounts than [wife]. [Husband] can avoid living expenses that [wife] cannot because his home and his vehicle are paid in full. These assets give [husband] collateral to obtain a loan if needed whereas [wife] has none.

This appeal follows.

# DECISION

*Property*

Husband argues that the district court abused its discretion by awarding wife one-half of husband's interest in the home. The district court did not characterize the property as marital *or* nonmarital property. This court reviews de novo whether property is marital or nonmarital, but defers to the district court's underlying findings of fact unless they are clearly erroneous. *Olsen v. Olsen*, 562 N.W.2d 797, 800 (Minn. 1997).

The district court found that, although the property was purchased prior to the marriage, because the parties were equally involved in the purchase and wife did not have the understanding that husband's interest was nonmarital, husband failed to meet his burden of showing that the property was nonmarital. But husband did not have to show that property acquired prior to the marriage was nonmarital because there is no presumption that it was marital. *See* Minn. Stat. § 518.003, subd. 3b (2014) ("All property acquired by either spouse subsequent to the marriage and before the valuation date is presumed to be marital property . . . .").

Marital property is property acquired by the parties "at any time during the existence of the marriage relation between them." *Id.* Nonmarital property is property acquired by

5

either party "before the marriage." *Id.*, subd. 3b(b). Nonmarital property is also property acquired by either party "before, during, or after the existence of their marriage, which . . . is acquired as a gift, bequest, devise or inheritance made by a third party to one but not to the other spouse." *Id.*, subd. 3b(a).

The property was purchased by husband's parents nearly one year before the marriage. The district court found that the parties were equally involved in the purchase, but the record does not support this finding just because wife saw the property with husband and attended the closing. Wife testified that she believed that husband's parents purchased the home for the parties because she was present when husband's parents presented it to them. But at the time, the parties had been dating only three months. Bowman testified that she and her husband purchased the home as an investment and as a place for her son to live. Bowman testified that her son's name was added to the title as a co-owner as a method of estate planning. If Bowman intended for her son to have a future in the home, it is unlikely that she intended to gift an interest in the home to a woman her son was dating.

We are mindful that the district court found wife more credible than Bowman and that we generally defer to a district court's credibility determinations. *See Vangsness v. Vangsness*, 607 N.W.2d 468, 472 (Minn. App. 2000). But in determining whether a gift is marital or nonmarital, the most important factor is the donor's intent. *Olsen*, 562 N.W.2d at 800. "Donative intent is demonstrated by the surrounding circumstances, including the form of the transfer." *Id.* Bowman testified that she and her husband never intended that any portion of the property would be a joint gift to the parties. Moreover, wife's name is not listed as an owner of the home. The homeowners are listed as husband and his parents.

6

If husband's parents intended to gift the home to both parties, they could have documented their intention by including wife as an owner. We conclude that the district court erred as a matter of law by failing to characterize the property as husband's nonmarital property.

The district court awarded wife one-half of husband's interest in the home in order to avoid an unfair hardship. If a district court finds that a party's resources or property, including the party's portion of marital property, "are so inadequate as to work an unfair hardship, considering all relevant circumstances, the court may . . . apportion up to one-half of [nonmarital] property . . . to prevent the unfair hardship." Minn. Stat. § 518.58, subd. 2 (2014). While a district court generally enjoys broad discretion regarding the division of property in marriage dissolutions, *Hein v. Hein*, 366 N.W.2d 646, 649 (Minn. App. 1985), that discretion is narrower in the nonmarital-property-division context. *Stageberg v. Stageberg*, 695 N.W.2d 609, 618 (Minn. App. 2005), *review denied* (Minn. July 19, 2005).

When the district court apportions nonmarital property, it must make findings to support the apportionment that are based on all relevant factors, including: "length of the marriage, any prior marriage of a party, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, needs, and opportunity for future acquisition of capital assets and income of each party." Minn. Stat. § 518.58, subd. 2. "A very severe disparity between the parties is required to sustain a finding of unfair hardship necessary to apportion nonmarital property" and should occur only in "an unusual case." *Ward v. Ward*, 453 N.W.2d 729, 733 (Minn. App. 1990) (quotation omitted), *review denied* (Minn. June 6, 1990).

7

Here, the district court apportioned one-half of husband's nonmarital property after finding that wife has no vehicle and struggles to find transportation while husband has two vehicles. This finding is insufficient to sustain an apportionment of nonmarital property to avoid an unfair hardship and is not supported by the record.

Wife had a vehicle that she sold during the marriage to pay off the car loan. Immediately before the parties' separated, wife used a family vehicle. At the time of trial, wife had been without a vehicle for six months. Wife's plan to purchase a vehicle involved her consolidating her debt. In the judgment and decree, the district court ordered husband to pay wife for one-half of the debt she carried. Accordingly, wife's receipt of $5,281.50 from husband would facilitate wife's plan to purchase a vehicle.

Moreover, the district court failed to consider any of the relevant factors necessary in an analysis of whether nonmarital property should be apportioned to avoid an unfair hardship. *See* Minn. Stat. § 518.58, subd. 2 (listing the relevant factors). And a proper analysis of the factors does not support a finding of unfair hardship.

In *Dammann v. Dammann*, this court determined that the district court erred by invading husband's nonmarital assets when the marriage lasted only eight years, wife was ten years younger than husband, wife earned more than husband, and both were healthy. 351 N.W.2d 651, 653-54 (Minn. App. 1984). This court stated: "[wife] is in at least as good a position, and perhaps even in a better position than [husband]." *Id.* at 653.

Conversely, in *Roel v. Roel*, this court determined that the record adequately supported the district court's finding that wife would suffer hardship without an apportionment of husband's nonmarital property when wife spent most of the thirty-year

8

marriage raising the parties' children, she lacked employment experience to enable her to become self-sufficient, she had health problems, and she lacked credentials to compete in a job market with degreed candidates. 406 N.W.2d 619, 622 (Minn. App. 1987).

Here, the parties separated a year and a half after they were married. Wife was 22 years old at the time of trial and husband was 41 years old. There is no indication that wife is unhealthy, whereas there is some indication in the record that husband was treated for substance abuse. Wife works a full-time job and earns an hourly wage of $16.25, she receives medical insurance through her employer, she has a retirement account with her employer, and she is anticipating earning a business-management degree. Husband works as a laborer for his family's business earning an hourly wage of $17, he will have to acquire medical insurance after the dissolution, and he has no retirement account. Similar to *Dammann*, wife is perhaps in a better position than husband considering all the relevant factors, including each party's opportunity for future acquisition of capital assets and income. *See* 351 N.W.2d at 653; Minn. Stat. § 518.58, subd. 2.

Based on the record, the district court abused its discretion by apportioning husband's nonmarital property. Accordingly, we reverse the district court's decision to award wife any interest in husband's nonmarital property.

### *Attorney fees*

Husband argues that the district court abused its discretion by awarding wife need-based attorney fees because there is no evidence that he has the ability to pay or that wife does not have the ability to pay her fees. An appellate court reviews an award of attorney fees for an abuse of discretion. *Gully v. Gully*, 599 N.W.2d 814, 825 (Minn. 1999).

9

The purpose of an award of need-based attorney fees is "to enable a party to carry on or contest the proceeding." Minn. Stat. § 518.14, subd. 1 (2014). A district court shall award need-based attorney fees if the party seeking fees proves, and the district court finds, that (1) "the fees are necessary for the good faith assertion of the party's rights in the proceeding and will not contribute unnecessarily to the length and expense of the proceeding," (2) "the party from whom fees . . . are sought has the means to pay them," and (3) "the party to whom fees . . . are awarded does not have the means to pay them." *Id.*; *Phillips v. LaPlante*, 823 N.W.2d 903, 907 (Minn. App. 2012) (stating that the party seeking fees must prove factors).

The district court noted that the parties' incomes were essentially equal, but found that wife was entitled to attorney fees because husband has overtime earnings that exceed wife's earnings. The evidence does not support this finding. Husband stated that his hours "vary according to work, weather and job changes." He testified that when he is working six months out of a year, he averages 50 hours a week and earns $17 per hour. There is no evidence that husband earns overtime wages based on his work schedule. The record shows that in 2013, wife earned $31,640 and husband earned $33,826. The parties' incomes are essentially equal; but even if they were not, any disparity in income alone is insufficient to support an award of need-based attorney fees. *See* Minn. Stat. § 518.14, subd. 1 (requiring findings on three factors: necessary for good-faith assertion of rights, obligor has means to pay, and obligee has inability to pay); *see also Geske v. Marcolina*, 624 N.W.2d 813, 817 n.2 (Minn. App. 2001) (noting cases asserting that a disparity in resources is a sufficient basis for an award of need-based attorney fees are stale).

The district court found that wife was entitled to attorney fees because husband can avoid living expenses that wife cannot because his home and vehicle are paid in full. But husband cannot avoid expenses for: property taxes, home insurance, home maintenance, utilities, gas, vehicle maintenance, and vehicle insurance. Wife's monthly expenses (without paying for husband's medical insurance) are $1,796, and her monthly income is $1,800. Husband's monthly expenses (without including the cost he will incur for medical insurance) are $2,270 and his monthly income is $2,339.20. The parties' monthly balance sheets are comparable.

Finally, the district court found that "[husband] has $6,644.69 more in his bank accounts than [wife]" and that his assets will "give [husband] collateral to obtain a loan if needed whereas [wife] has none."

In the property division, the district court awarded husband: two vehicles (one of which was nonmarital property) and his bank accounts that totaled $8,542.55. The district court awarded wife: her 401(k)—$5,016 of which was marital property; her treasury bonds, valued at $175; her Wells Fargo stock, valued at $70; and her bank accounts that totaled $1,897.86.

Husband does have a higher bank-account balance than wife. However, the district court failed to acknowledge that it awarded wife her entire 401(k) that had a marital-interest value of $5,016. Husband has no retirement account. The district court also failed to acknowledge that it ordered husband to pay wife $5,281.50 for one-half of the debt in wife's name. The district court also found that husband could obtain a loan whereas wife could not, but the evidence shows that wife has acquired at least one loan previously as

11

reflected in her 401(k) balance. The finding that wife cannot secure a loan with collateral may be supported by the record, but it is unclear if she has the ability and resources to obtain a loan.

Because the district court failed to properly analyze whether husband has the ability to pay wife's attorney fees and whether wife does not have the means to pay, we reverse and remand for the district court to reconsider its award of attorney fees. Whether to reopen the record on remand to reconsider the attorney-fee issue shall be discretionary with the district court.

**Reversed and remanded.**